***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement dated January 29, 2002 and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The date of the accident is June 9, 1998.
2. The parties are bound by and subject to the Workers' Compensation Act.
3. The employment relationship existed between plaintiff and the employer at all times relevant to this claim.
4. The average weekly wage is to be determined by wage transcript.
5. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1: Plaintiff's medical records 215 pages
b. Stipulated Exhibit #2: Industrial Commission Forms
c. Stipulated Exhibit #3: Five photographs of plaintiff
6. The depositions of Dr. Francis O. Walker and Dr. William J. Weiner are a part of the evidentiary record. All objections in the depositions are ruled upon in accordance with the applicable Rules of Civil Procedure and in accordance with the findings and conclusions of law contained herein.
7. Issues before the Industrial Commission as propounded by plaintiff are as follows:
 a. Was plaintiff's dystonia condition caused or aggravated, or a natural consequence of, the compensable work-related accident of June 9, 1998?
 b. Is plaintiff entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 because his medical treatment and compensation benefits for his dystonia were denied without reasonable grounds, thus requiring a hearing in this matter?
8. The issue before the Industrial Commission as propounded by defendant is as follows:
 a. Whether plaintiff's current medical condition of dystonia is causally related to the initial work-related injury by accident, which occurred on June 9, 1998.
 ***********
Based upon the foregoing stipulations and the competent, credible evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 56 years of age. Plaintiff is married, and he and his wife have two adult children.
2. From 1966 until August 10, 1999, plaintiff was employed continuously by defendant, Crawford and Company. During his employment with defendant he worked as a claims adjuster, assistant manager and manager. At the time of his injury he was the manager of the Greenville office for Crawford and Company and was in charge of the overall supervision of that office.
3. Prior to 1998, plaintiff was in overall good health with the exception of diabetes and hypertension. Plaintiff was active in his church and civic organizations; he enjoyed traveling and was an active participant in the lives of his children.
4. On June 9, 1998, plaintiff was unloading a box of photocopy paper from the rear seat of a car when he experienced a pull in the right neck area that gradually produced right arm pain and weakness. He also developed some weakness of his right hand, to the extent that he could not place a key in a lock, and it took two hands to turn a car ignition. A subsequent myelography confirmed a right C7-T1 defect with compression of the right C8 nerve root.
5. Plaintiff's treating physician referred him to Ira Hardy, M.D. On September 1, 1998, Dr. Hardy performed a partial foraminotomy. A laminectomy was carried medially to expose the lateral dura at the origin of the nerve root. A small protrusion could be seen. A very small fragment was removed first, and then a larger fragment was removed. Post-operatively plaintiff did well and was discharged from the hospital the next day.
6. Plaintiff was paid his regular salary while he was out of work after this operation, and he eventually returned to his employment in mid-October 1998. He worked until August 10, 1999 when his physical condition prevented him from working any further. Plaintiff has not worked in any capacity since that date.
7. Approximately three weeks after the surgery by Dr. Hardy, plaintiff's toes began to move constantly, and he experienced some numbness in his fingers. He developed blisters because of the involuntary movement of his toes.
8. Dr. Hardy eventually referred plaintiff to Arvo Kanna, M.D., a neurologist at East Carolina Medical Center, who diagnosed plaintiff with dystonia, a sustained, involuntary movement disorder that is recurrent and often has a twisting component. Plaintiff has been diagnosed with generalized dystonia, which involves different parts of the body; he has involuntary movements of the feet, jaw clinching, eye spasms, and closing of the eyelids. Some of these involuntary movements were apparent during the course of the hearing before the deputy commissioner in this matter.
9. In August of 1999, plaintiff was referred to Francis O. Walker, M.D., Professor of Neurology at Wake Forest University School of Medicine in Winston-Salem, North Carolina. Dr. Walker was licensed in 1984 and completed a fellowship in movement disorders and neuropharmacology. Dr. Walker is board certified in neurology and psychiatry, and set up a movement disorders clinic; he has been a referral for such disorders in this area for eighteen years.
10. Plaintiff's first visit with Dr. Walker was October 20, 1999. As treatment for plaintiff's dystonia, Dr. Walker administers botulinum toxin ("botox") injections to help plaintiff's muscles relax. Plaintiff has had injections around the eyes, in his jaws, through his chin, in his temples, in the back of the neck and in his feet. While these injections help, they do not completely stop, the involuntary movements. According to Dr. Walker, "every blue moon", a patient with the condition of dystonia may become better; therefore, it is likely that plaintiff's physical condition will be permanent. At the time of the hearing before the deputy commissioner, Dr. Walker was still treating plaintiff and had plans to continue to do so.
11. Dr. Walker indicated that plaintiff needs botox injections every three to four months, and will need the same for the remainder of his life, in conjunction with psychological treatment for significant depressive disorder. Additionally, as a result of his dystonia and the medications he takes, plaintiff is usually fatigued, has difficulty concentrating and communicating, has difficulty eating, and has lost significant weight.
12. Dr. Walker opined that the peripheral trauma plaintiff sustained on June 9, 1998, along with the cervical laminectomy performed on plaintiff, induced plaintiff's dystonia or triggered an underlying tendency for the condition. Peripheral trauma can be defined as trauma that does not typically involve the central nervous system, such as an arm, leg or trunk of the body. Dr. Walker's opinion was based on several factors, including the following: plaintiff's generalized dystonia spread rapidly after his surgery, which is uncommon with generalized dystonia; there was a temporal sequence between the onset of the illness and the surgical trauma; adults over the age of 50 do not normally develop generalized dystonia; surgical intervention, in itself, is a major trauma involving nerves that are intimately in contact with the central nervous system; and Dr. Walker has actually seen patients who have developed dystonia post-cervical laminectomy. Furthermore, according to Dr. Walker, a preponderance of the medical literature supports a relationship between trauma and the subsequent development of dystonia. An educational videotape for physicians and dystonia patients admitted into evidence also acknowledges the relationship between trauma and dystonia.
13. Defendant's expert witness, Dr. William J. Weiner, was also trained in neurology and movement disorders. He has served as a professor of neurology for several universities, including being named Chairman of the Department of Neurology at the University of Maryland. Dr. Weiner also serves as Director of the Maryland Parkinson's Disease and Movement Disorder Center in Baltimore. He is board certified in both neurology and psychiatry, is considered an expert in movement disorders within neurology, and is recognized nationally for his extensive experience in treating and evaluating patients with movement disorders.
14. Dr. Weiner was provided a comprehensive set of plaintiff's medical records and a transcript of the hearing of this matter. Upon review of the same, Dr. Weiner offered his opinion that neither the trauma plaintiff sustained on June 9, 1998, nor his subsequent cervical laminectomy are causally related to plaintiff's movement disorder. Dr. Weiner's opinion was based upon his supposition that there is very little evidence to support the idea that peripheral trauma can induce dystonia; that numbers of people undergo cervical laminectomies without resulting dystonia, and that when it does occur, it is an extraordinarily rare event; that there is no evidence that plaintiff's central nervous system was damaged in any way; and that even based on the determinative factors expressed by those physicians who do subscribe to the proposition that peripheral trauma can induce movement disorders, plaintiff's situation does not meet that criteria. Dr. Weiner has never examined, evaluated or treated plaintiff.
15. Two very competent and accomplished physicians have offered differing opinions on the medical issues in dispute. However, competent credible evidence exists in the record to establish that plaintiff's injury by accident of June 9, 1998 resulted in either the acquisition of, or the triggering of an underlying tendency for dystonia in plaintiff.
16. As a result of plaintiff's injury by accident of June 9, 1998 and resulting dystonia, plaintiff has been unable to earn any wages in any capacity since August 10, 1999.
17. At the time of the injury by accident, plaintiff's earnings were sufficient to generate the maximum compensation rate for 1998, $532.00 per week.
18. This workers' compensation action involved substantial questions of both fact and law, and the prosecution and defense of the action was not stubborn, unfounded or litigious.
 ***********
Based on the foregoing Findings of Fact and Stipulations of Record, the undersigned enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff's injury by accident of June 9, 1998 resulted in plaintiff's acquisition of or triggered an underlying tendency for dystonia. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury by accident and resultant dystonia, plaintiff has been totally disabled since August 10, 1999. N.C. Gen. Stat. § 97-29.
3. Plaintiff's wages while employed with defendant-employer were sufficient to generate a compensation rate of $532.00, the maximum compensation rate for 1998. N.C. Gen. Stat. § 97-2(5).
4. For his total disability, plaintiff is entitled to payment of total disability compensation by defendant, at the rate of $532.00 per week from August 10, 1999 and continuing until such time that he returns to gainful employment, or until further Order of the Industrial Commission, subject to attorney's fees hereinafter provided. N.C. Gen. Stat. §97-29.
5. Plaintiff is entitled to payment by defendant of all medical expenses incurred and to be incurred for treatment rendered to plaintiff for so long as said treatment is designed to effect a cure, provide relief of his symptoms and/or lessen his period of disability. N.C. Gen. Stat. § 97-25.
6. The hearing of this matter was not unreasonably defended, and therefore no attorney's fees should be assessed pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Subject to attorney's fees approved herein, defendant shall pay to plaintiff total disability compensation at the rate of $532.00 per week beginning August 10, 1999 and continuing thereafter each week until such time as plaintiff returns to gainful employment, or until further Order of the Industrial Commission. All benefits, which have accrued to date, shall be paid in one lump sum.
2. Defendant shall pay all medical expenses incurred and to be incurred for treatment rendered to plaintiff as related to his compensable injury by accident, for so long as said treatment is designed to effect a cure, provide relief of his symptoms and/or lessen his period of disability. Said payments shall be made according to proper procedure as outlined by the Industrial Commission.
3. An attorney's fee of twenty-five percent (25%) of the amounts due plaintiff under Paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the amounts due plaintiff shall be deducted from said amount and paid directly to plaintiff's counsel. Thereafter, every fourth check due plaintiff shall be paid directly to plaintiff's counsel. 4. Defendants shall pay the costs.
This the 19th day of March 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN